TIMOTHY C. FOX
Montana Attorney General
DALE SCHOWENGERDT
Solicitor General
J. STUART SEGREST
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
dales@mt.gov; ssegrest@mt.gov
Phone:  (406) 444-2026

COUNSEL FOR DEFENDANT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRAD TSCHIDA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN MOTL, in his official capacity as Montana's Commissioner of Political Practices,<br><br>Defendant. | Case No. CV 16-102-BMM<br><br><br>**DEFENDANT'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

Plaintiff's application for a temporary restraining order (and for a

preliminary injunction) should be denied for a straightforward reason.  Plaintiff has

already spoken.  More specifically, he has already publicized and provided to his

fellow legislators a copy of his complaint against the Governor.  Doc. 1, ¶ 34.  He

thus has no need for an injunction against Mont. Code Ann. § 2-2-136(4), nor is

there any current threat to his right to speak.  In short Plaintiff lacks standing, both

on the merits and to receive a temporary injunction.

Plaintiff nevertheless requests that this Court grant a temporary restraining

order "enjoining Defendant Motl from penalizing Representative Tschida for his

legislative speech."  Doc. 2 at 3.  But Mr. Motl, Montana's Commissioner of

Political Practices, has no authority to take criminal action against Rep. Tschida,

and no ethics complaint has been filed against Rep. Tschida regarding his release

of the ethics complaint.  Likewise, no county attorney has filed charges or even

indicated he or she will file charges regarding this matter.  Without a credible

threat of prosecution, there is no threat of irreparable injury and no need for an

injunction.

**BACKGROUND FACTS**

I.      **Plaintiff's disclosure of the ethics complaint**

According to Plaintiff, Representative Tschida filed an ethics complaint this

past September against Governor Steve Bullock and a member of his cabinet,

alleging misuse of state-owned aircraft.  Doc. 1, ¶ 20.  He was informed by

Commissioner Motl that he may not disclose the complaint.  *Id.*, ¶ 24.  The

Governor's chief legal counsel appeared on behalf of the Governor and requested

an extension to respond to the complaint.  *Id.*, ¶ 25.  Plaintiff was apparently

concerned that using a state attorney might also be a misuse of resources.  *Id.*, ¶ 26.

Then, on November 2, Plaintiff responded to a letter from two Montana

senators regarding a proposal to convene a select committee to investigate

allegations of misuse of state funds by the Governor.  *Id.*, ¶ 33.  It is not clear how

many legislators Plaintiff's email response went to, but the Great Falls Tribune

reported it went to Senators Brown and Keenan and "other legislators from both

sides of the aisle."  Doc. 3-2.  Instead of just stating that he had filed a complaint

against the Governor, Plaintiff "included with that letter[1] a copy of the ethics

complaint [he had filed against the Governor]" as well as a document from the

Commissioner to Andy Huff granting the requested extension.  Doc. 1, ¶¶ 33-34.

The same day or the next, the Great Falls Tribune somehow obtained a copy

of Plaintiff's email "referring to a pending ethics complaint [Tschida] filed

against" the Governor.  Doc. 3-2.  Commissioner Motl is quoted in the article as

stating that the release of "an ethics complaint . . . is a violation of law and it's

outrageous anybody would breach a state statute in the last week of the campaign."

*Id.*  Commissioner Motl was then interviewed by the KGVO radio station, *see*

Doc. 2 n.5, where he stated his "jurisdiction is narrow" regarding ethics

---

[1] Though referred to as a "letter" in Plaintiff's Complaint in this matter (Doc.
1), the Great Falls Tribune article reports that Plaintiff sent an email.

complaints.  He then opined that the "main consequence" that would result from violation of a "mandatory duty" is not an ethics complaint, but a charge of "official misconduct," which is a criminal charge.  *Id.*

Commissioner Motl has not filed a criminal complaint with a county attorney, and does not plan to do so.  Ex. 1.  Commissioner Motl has also not received a complaint regarding the potential violation of Mont. Code Ann. § 2-2-136(4) by Plaintiff, and will not act on the matter until this lawsuit is resolved.  *Id.*

## II.    Overview of the ethics complaint process

A person alleging an ethics violation against a Montana state employee or officer "may file a complaint with the commissioner of political practices."  Mont. Code Ann. § 2-2-136(1)(a).  The Commissioner then determines if the complaint states a "potential violation," and "may request additional information from the complainant or the person who is the subject of the complaint" if needed to make this determination.  *Id.*

The Commissioner may dismiss a complaint that he determines "is frivolous, does not state a potential violation . . . or does not contain sufficient allegations."  Mont. Code Ann. § 2-2-136(1)(b).  The Commissioner may also issue a "summary decision without holding an informal contested case hearing on the complaint" if he determines that the matter has been "decided in a prior decision."  *Id.*  Once the

Commissioner dismisses a complaint or issues a summary decision, the matter is subject to judicial review.  § 2-2-136(3).

If the Commissioner instead "determines that the complaint states a potential violation of this part, the commissioner shall hold an informal contested case hearing on the complaint . . . ."  Mont. Code Ann. § 2-2-136(1)(c).  An informal contested case hearing includes providing parties the opportunity to present written and oral evidence or statements.  *See* Mont. Code Ann. § 2-4-604; *see also* Mont. Admin. R. 44.10.613.  After the hearing, the Commissioner "shall issue a decision."  Mont. Code Ann. § 2-2-136(1)(c).

The "complaint and records obtained or prepared by the commissioner in connection with an investigation or complaint are confidential documents and are not open for public inspection."  Mont. Code Ann. § 2-2-136(4).[2]  Likewise, the complainant and the subject of the complaint "shall maintain the confidentiality of

---

[2] "*Except for* records made public in the course of a hearing held under subsection (1) and records that are open for public inspection pursuant to Montana law[.]"  Mont. Code Ann. § 2-2-136(4) (emphasis added).  These exceptions are not defined, but may refer to a confidentiality waiver by the responding party, as to the first, or to the public's ability to request records from the employing agency, as to the second.  The "pursuant to Montana law" exception may also acknowledge Montana's constitutional right to know,  which, in concert with the "made public in the course of a hearing" exception, may provide the Commissioner authority to consider a request to make the hearing or records public, prior to a decision.  If so, the determination would be on a case-by-case basis and the presumption would be that privacy temporarily outweighs the right to know.

the complaint and any related documents released to the parties by the

commissioner[.]"

This confidentiality requirement, however, is temporally limited, only

lasting "until the commissioner issues a decision." *Id.* The "commissioner's

decision" that ends confidentiality, and allows for judicial review, includes a

decision issued "after a hearing, a dismissal, or a summary decision." Mont. Code

Ann. § 2-2-136(3). Even prior to issuance of a decision, however, the

Commissioner "may issue statements or respond to inquiries to confirm that a

complaint has been filed, to identify against whom it has been filed, and to

describe the procedural aspects and status of the case." § 2-2-136(5). The subject

of the complaint may also waive confidentiality in writing. § 2-2-136(4).


**III.   Legislative history of the ethics complaint process and the
confidentiality provision**

In 1995, the Legislature dramatically restructured the code of ethics,

changing what had been guidelines into requirements, providing for an ethics

complaint process with the Commissioner of Political Practices, and providing for

confidentiality. Ex. 2. The Legislature was cognizant of "the potential for

someone to abuse the process by filing frivolous complaints and damaging

someone's reputation." Ex. 3 at 14; *see also* Ex. 4 at 4 (then Commissioner

Argenbright noting the "great potential for personal damage."). Confidentiality

was also necessary to encourage witnesses to speak and protect them from

retaliation.  *See* letter of Frank Grahm, legal counsel to Montana Department of

Military Affairs, Ex. 5 (noting that under the old ethics guidelines:  "Folks are just

afraid or wary of voicing their concerns.  There is no effective mechanism to

investigate and . . . [t]here is no means to provide confidentiality to the accuser or

the accused and there is no protection against retribution.").

In 2001, the Legislature made additional amendments to the code of ethics.

Ex. 6.  These included removing criminal penalties, as well as clarifying that the

confidentiality provision applied to complainants and the subject of the complaint

as well as to the Commissioner.  *Id.* at 6 and 8.  As explained by Senator Hargrove

in response to Senator Toole's concern about keeping complaints confidential:

"Ethics is different than the rough and tumble finance laws."  Ex. 7 at 5.


## ARGUMENT

Prior to being entitled to an injunction, Plaintiff must show each of the

following:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable

harm if injunctive relief is not granted, (3) the balance of equities tips in plaintiff's

favor, and (4) an injunction is in the public interest.  *Winter v. Natural Resources*

*Defense Council*, 555 U.S. 7, 20 (2008).  If a plaintiff fails to demonstrate he is

likely to succeed on the merits of his claims, the remaining "*Winter* elements" need

not be considered. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (noting the district court "properly considered the remaining *Winter* elements only as to claims it concluded were meritorious.").

An injunction "is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.  An injunction is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited v. A.BMH.*, 240 F.3d 781, 786 (9th Cir. 2001) (emphasis added).  A plaintiff thus must demonstrate that irreparable injury is not just "possible," but "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 22-23 (emphasis in the original).

Additionally, Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.  "Mandatory injunctions" where plaintiffs "seek to alter the status quo," as sought by Plaintiff here, are "particularly disfavored." *American Freedom Def. Initiative v. King Co.*, 796 F.3d 1165, 1173 (9th Cir. 2015) (citation omitted).

## I.     Plaintiff lacks standing to challenge the confidentiality provision.

Plaintiff filed an ethics complaint, pursuant to Mont. Code Ann. § 2-2-136(1), then released a copy of the complaint to his fellow legislators, apparently believing that his disclosure was a legislative act and thus exempt from the confidentiality requirement.  Because Plaintiff already publicized the complaint,

his right to speak to his fellow legislators, under either the First Amendment or

Montana Constitution's Speech and Debate Clause, has not been infringed.  And

there is no outstanding complaint regarding Plaintiff's release of the ethics

complaint, unlike the situation in *Lind v. Grimmer*.  *See* 30 F.3d 1115, 1117 (9th

Cir. 1994) (ethics complaint filed against Lind, and response requested by

campaign spending commission, prior to Lind filing his federal suit).

 Plaintiff's claim is also not prospective, because he does not assert that he

wishes to file additional ethics complaints, and to do so publicly.  *See Stilp v.*

*Contino*, 613 F.3d 405, 406-08 (3d Cir. 2010) (plaintiff, a "government watchdog"

who often filed ethics complaints, had settled a previous matter in which he

publicized an ethics complaint, but alleged that he wished "to file *additional*

complaints under the Ethics Act, and to do so publicly . . . .") (emphasis added).

The Eleventh Amendment bars actions for retroactive relief brought by a citizen

against a state official acting in his official capacity.  *Edelman v. Jordan*, 415 U.S.

651, 663 (1974).  The issue here is thus barred by the Eleventh Amendment, moot

(because Plaintiff had already spoken by releasing the complaint), and unripe

(because there is no current threat of prosecution).  *Thomas v. Anchorage Equal*

*Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  Without a live

controversy, Plaintiff lacks standing to bring his complaint.   *Id.*

**II.     There is no likelihood of irreparable injury because there is no current threat of prosecution and plaintiff already released the ethics complaint.**

Even if standing is assumed, because Plaintiff here already publicly disclosed the complaint there is no impending injury, or need for a remedy, regarding his right to speak.  Plaintiff also does not face a current or impending threat of prosecution, because Commissioner Motl has agreed to not pursue any ethics complaint against Plaintiff while this suit is pending.  Ex. 1.  Likewise Commissioner Motl does not plan to file a complaint with a county attorney, *id.*, and Plaintiff has not presented any evidence a county attorney plans to bring criminal charges against him concerning this matter, or has even been requested to do so.  Without any threat of irreparable injury while this litigation is pending, Plaintiff is not entitled to, or in need of, an injunction.  *Winter*, 555 U.S. at 22-23.

**III.    The likelihood of success on the merits is low because *Lind v. Grimmer* is distinguishable**.

Plaintiff, in his brief in support (Doc. 3), asserts that *Lind v. Grimmer* controls this matter, and that Mont. Code Ann. § 2-2-136(4) fails strict scrutiny for the reasons given in *Lind*.  Doc. 3 at 2,11-13.  But while similar, *Lind* is distinguishable.  First, *Lind* dealt with complaints about campaign finance violations, 30 F.3d at 1117, a significantly less sensitive topic than allegations of ethics violations.  An allegation that a candidate failed to disclose a campaign

contribution,[3] for example, implicates less sensitive personal information than an allegation that a state official is guilty of unscrupulously using their public office or the public funds for personal gain. *See also* Mont. Code Ann. § 2-2-103(1) ("public office or employment is a public trust"). In adopting the confidentiality provision, in 1995 and 2001, the Legislature made clear that the confidentiality provision was unique to the ethics arena and necessary due to the potentially slanderous nature of ethics complaints. *See* legislative history above.

Consequently, in Montana, campaign finance complaints, unlike ethics complaints, are open to public inspection from the time a complaint is filed. Mont. Code Ann. § 13-37-119. Thus Mont. Code Ann. § 2-2-136(4) meets the compelling interest of protecting a sensitive, private interest. And the provision is narrowly tailored to meet this interest, because it only applies to ethics complaints, not campaign finance.

Second, the confidentiality requirement under Mont. Code Ann. § 2-2-136(4) is temporary, not permanent, unlike the provision in *Lind*, where a dismissed complaint was kept confidential indefinitely "at the option of the person complained of." 30 F.3d at 1117. As *Lind* explained "[W]hile the validity of some of these prohibitions as applied during the pendency of the investigation may be

---

[3] *See* Mont. Code Ann. § 13-37-225.

arguable . . . . [o]nce the Commission has made its probable cause determination their application clearly is unconstitutional." *Id.* at 1122-23.

Under Mont. Code Ann. § 2-2-136(4), confidentiality is only imposed on the parties "until the commissioner issues a decision." Thus, after the commissioner investigates a complaint and issues a decision, whether a full decision after a hearing, "a dismissal, or a summary decision," § 2-2-136(3), the confidentiality imposed by § 2-2-136(4) lifts, and the parties may publicly disseminate the complaint and decision.

The fact that a complaint is only temporarily confidential places the analysis of this statute more in line to that undertaken in *Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d Cir. 1994). There the Second Circuit held that a temporary imposition of confidentiality during the judicial review council's investigation--prohibiting disclosure of the substance of a complaint, as well as disclosure that a complaint was filed or testimony given--was permitted by the First Amendment. *Id.* at 111. But, as noted by Judge Christensen, this limited confidentiality is only constitutional "while an investigation of a complaint [is] ongoing." *Cox v. McClean*, 49 F. Supp. 3d 765, 771 (D. Mont. 2014). Because confidentiality under § 2-2-136(4) ends once the investigative stage is complete and a decision issued, this provision fits within the constitutional niche carved out

in *Kamasinski*.  The temporal limits on the confidentiality provision also addresses

Plaintiff's first overbreadth argument.  *See* Doc. 3 at 13-14.

Third, Montana's confidentiality provision is less burdensome than the

provision considered in *Lind*, and even less burdensome than that considered in

*Kamasinski*.  In both *Lind* and *Kamasinski*, the challenged provision prohibited

disclosure of the fact that a complaint was filed.  *Lind*, 30 F.3d at 1117;

*Kamasinski*, 44 F. 3d at 108.  Here however, the Commissioner may, on his own,

or upon request, "confirm that a complaint has been filed . . . identify against

whom it has been filed, and . . . describe the procedural aspects and status of the

case."  Mont. Code Ann. § 2-2-136(5).  Thus, the only strict ban under Montana's

provision is on disclosure of the substance of the complaint and the record of the

proceeding, the portion most likely to contain personally sensitive information.

Because Montana's temporary, limited confidentiality provision regarding

ethics complaints is distinguishable from the campaign finance confidentiality

provision in *Lind*, and narrower than the provision upheld in *Kamasinski*, Plaintiff

has not shown a likelihood of success on the merits.

IV.     **Montana's confidentiality provision meets strict scrutiny.**

As with the court in *Kamasinski*, Montana is concerned about the potential

that "complainants will engage in a campaign of harassment."  44 F.3d at111; *see*

legislative history discussed above.  This would lead to the use of ethics

complaints as a weapon, not to bring to light ethics violations, but to embarrass

state officials and employees.  Additionally, the use of ethics complaints to harass

would likely lead to "an overburdening of the [Commissioner] with frivolous

complaints."  *Id.*

On the other side of the coin, a result of the lack of initial confidentiality

"will be that witnesses otherwise willing to speak candidly will decline to do

so . . . ."  *Id.*; Ex. 5.  Confidentiality, therefore, protects witnesses as well as the

subject of complaints, and encourages those with knowledge, including

whistleblowers, to come forward and address potential violations.  This allows the

Commissioner to more efficiently and effectively determine if an ethics violation

has occurred, thereby facilitating Montana's ability to address, and prevent, the

unethical use of state resources.

As noted above, Montana's confidentiality provision is narrowly tailored to

address these interests because it is only effective during the investigative stage.

Once the Commissioner issues a decision, confidentiality is lifted.  Mont. Code

Ann. 2-2-136(4).

Similar to the judicial commission in *Kamasinski*, the Commissioner

conducts an informal investigation and hearing.  Though under Montana's

provision the Commissioner holds an informal hearing and then issues a decision,

and under the scheme in *Kamasinski* the commission conducts an investigation and

then issues a finding of probable cause, the procedure is substantially the same.

Compare *Kamasinski*, 44 F.3d at 108-09 to Mont. Code Ann. § 2-2-136(1)(c).

Both contemplate an investigation, including witness testimony and responses

from the parties, before a decision by an administrative body.  If a party disagrees,

he may appeal the administrative decision to the district court, and at that point the

proceeding and record is open.  *Kamasinski*, 44 F.3d at 108; § 2-2-136(3).  As

noted above, this temporal limitation addresses Plaintiff's argument that Montana's

provision is "overbroad because it extends throughout all of the ethics

proceedings."  *See* Doc. 3 at 13.

Montana's provision is also narrowly tailored because the Commissioner has

the ability to "confirm that a complaint has been filed . . . identify against whom it

has been filed, and . . . describe the procedural aspects and status of the case."

Mont. Code Ann. § 2-2-136(5).  Thus confidentiality only reaches the substance of

the complaint and witness testimony, the source of the most personally sensitive

information.

Plaintiff is also incorrect that including public officials within the confidentiality provision causes the provision to be overbroad.  Plaintiff relies on *Lind*, *see* Doc. 3 at 15, but fails to recognize that *Lind* deals with campaign finance violations.  It is reasonable to say that candidates for public office "must be prepared to endure a heightened level of criticism" about "campaign spending improprieties," *Lind*, 30 F.3d at 1120, but the increased sensitivity, and potential for abuse, concerning allegations of ethics violations, as described above, provides additional interest for the State to maintain confidentiality during the initial investigative stage, even as to officials.

Finally, the confidentiality provision is not underinclusive.  While the subject of a complaint may waive confidentiality, this is perfectly in line with the state's interest of recognizing the personally sensitive nature of ethics allegations.  As to the fact that the provision does not prevent third-party witnesses from speaking about their testimony, these witnesses are unlikely to have gleaned any knowledge about the process and will not have seen the complaint.  Practically speaking, they do not have any substantive information to share other than their personal knowledge.

**V.     The ethics complaint process specifically recognizes the limits of Montana's Speech and Debate Clause.**

Article V, section 8 of the Montana Constitution states that a legislator "shall not be questioned in any other place for any speech or debate in the legislature." This constitutional limitation is recognized by Mont. Code Ann § 2-2-136 (1)(a) which withholds jurisdiction from the Commissioner "if a legislative act is involved in the complaint." *See also* Mont. Admin. R. 44.10.604(1).  Thus the ethics complaint process is, on its face, in compliance with Art. V, § 8.

If the Commissioner ever considers a complaint against Rep. Tschida regarding the release of the complaint here, and Commissioner Motl has declared he will not while this lawsuit is pending, Plaintiff can raise the speech and debate clause defense, and § 2-2-136 (1)(a).  If the Commissioner disagrees that disclosing the complaint was a legislative act, Plaintiff may seek judicial review in district court and raise this jurisdictional defense, and then if necessary appeal to the Montana Supreme Court, the ultimate arbiter of rights under the Montana Constitution.  Mont. Code Ann. § 2-2-136(3).  If this Court determines it is nevertheless necessary to decide this issue in advance in federal court, the Court should certify a question of law to the Montana Supreme Court, to allow that body the chance to address the issue under Montana's Constitution.  *See* Mont. R. App. P. 15(3).

**VI.    Neither the balance of equities nor public interest tips in plaintiff's favor.**

As the Ninth Circuit has noted, "Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) (quotation omitted).  Plaintiff, in arguing that the balance of equities and the public interest tip in his favor, incorrectly relies on free speech cases "raising serious First Amendment questions."  Doc. 3 at 24 (citing *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002)).  Here Plaintiff has already spoken and, thus, his right to speak is not infringed, nor is there a current threat of prosecution.  *See* Ex. 1.  On the other hand, the public's interest in protecting sensitive personal information and ensuring the ethics process is not abused would be undermined by an injunction.

## CONCLUSION

For the above-stated reasons, this Court should deny Plaintiff's application for a temporary restraining order.

Respectfully submitted this 15th day of November 2016.

TIMOTHY C. FOX
Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

By:  /s/ J. Stuart Segrest
       J. STUART SEGREST
       Assistant Attorney General
       Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the

clerk of the court for the United States District Court for the District of Montana,

using the cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the

cm/ecf system.

Dated:  November 15, 2016    /s/  J. Stuart Segrest
                       J. STUART SEGREST
                       Assistant Attorney General
                       Counsel for Defendant

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to L.R. 7.1(d)(2)(E), this response contains 3,672

words, excluding the caption and certificates of service and compliance.

*/s/  J. Stuart Segrest*
J. STUART SEGREST
Assistant Attorney General
Counsel for Defendant
