Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
Facsimile:  (406) 551-6919
E-mail:      matthewmonforton@yahoo.com

Attorney for Plaintiff Brad Tschida

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BRAD TSCHIDA, | ) |
| | ) Case No. CV 16-102-H-BMM |
| Plaintiff, | ) |
| | ) **AMENDED COMPLAINT FOR** |
| v. | ) **DAMAGES, INJUNCTIVE RELIEF,** |
| | ) **AND DECLARATORY RELIEF** |
| JONATHAN MOTL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

1. Representative Brad Tschida, a member of the Montana House of Representatives, has been criticizing Governor Steve Bullock's use of state-owned aircraft for personal and political purposes since the 2015 session of the Legislature.

2. The drumbeat of criticism from Representative Tschida and, later, the press, forced Governor Bullock in March 2016 to formally pledge to reimburse the state when using the state plane for campaign purposes.

3. Representative Tschida continued criticizing Governor Bullock for failing to adequately reimburse the state for improperly using the state plane, criticisms echoed by the press and Governor Bullock's opponent, Greg Gianforte, the Republican nominee for governor.

4. Matters came to a head in September after the Commissioner of Political Practices, Jonathan Motl, was asked during a radio interview about a "government official" the radio station was investigating for receiving free concert tickets.

5. He responded by discussing Montana's ethics statute, citing a specific provision of it "just in case there's some lawyer out there listening," and advising any potential complainants to file ethics complaints with his office.

6. Representative Tschida did that, though the ethics complaint he filed did not name just one "government official," but rather two: Governor Bullock and his Commerce Director, Meg O'Leary.

7. And the complaint was not limited to receipt of free concert tickets – it also alleged that Governor Bullock and Director O'Leary misused a state-owned plane to travel to the concert.

8. The complaint also included other allegations of unlawful gifts consisting of non-governmental travel in which Governor Bullock was accompanied by Director O'Leary.

9. Defendant Motl's response to Representative Tschida's complaint differed markedly from his radio interview in which he practically invited a complaint against the "government official" KGVO radio was investigating.

10. Defendant Motl refused to take any action on Representative Tschida's complaint in September and October.

11. On November 2, 2016, in response to a letter from fellow legislators seeking to investigate misuse of state resources by the Bullock Administration, Representative Tschida disclosed his ethics complaint.

12. Defendant Motl learned of the disclosure and, on November 3, told the press that Representative Tschida would be criminally prosecuted for it.

13. Defendant even emailed 90 other legislators *before* Election Day to "remind" them that ethics complaints are confidential by law.

14. The da*y after* Election Day, however, Defendant Motl admitted in sworn testimony that he had not filed a criminal complaint with any county attorney and had no plans to do so in the future.

15. Defendant Motl falsely threatened a criminal prosecution of Representative Tschida in order to silence criticisms of Governor Bullock and Director O'Leary during the critical, final week of the campaign.

16. Defendant Motl abused his authority by injecting himself into a long-running dispute between Governor Bullock and Representative Tschida and

unlawfully threatening the latter with criminal prosecution for engaging in protected speech.

17. Defendant Motl's threats of criminal prosecution constituted retaliation against Representative Tschida for speech critical of Governor Bullock and Director O'Leary, thereby violating Representative Tschida's clearly established First Amendment rights.

## JURISDICTION AND VENUE

18. This Court has jurisdiction under 28 U.S.C. §§1331, 1343, 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

19. Venue for this action properly lies in the Helena Division of the District of Montana because Defendant Motl is believed to reside within the Helena Division.

## PARTIES

20. Plaintiff Brad Tschida is, and at all times pertinent to this action has been, a resident of Missoula County in the State of Montana.

21. Defendant Jonathan Motl was appointed Commissioner of Political Practices in 2013 by Governor Bullock and has held that office at all times pertinent to this action.

22. Plaintiff is informed, believes, and thereon alleges that Defendant Motl resides in Lewis & Clark County in the State of Montana.

## STATEMENT OF FACTS

*1. Representative Tschida's Criticisms of Bullock's Abuse of the State Plane*

23. Representative Brad Tschida was elected in November 2014 to the Montana House of Representatives and was re-elected on November 8, 2016.

24. He has long criticized Governor Bullock for using state-owned aircraft for personal and political purposes.

25. For example, during the 2015 legislative session, Representative Tschida attempted to strip funding for the Governor's plane from the state budget.

26. On March 10, 2016, the *Missoulian* published an editorial authored by Representative Tschida in which he accused Governor Bullock of flying "to Missoula from Helena to conduct 'state' business, which also happened to 'conveniently' coincide with a campaign event, using the state's turboprop airplane, at a cost of not less than $1,000/hour."

27. A week after the *Missoulian* published the editorial, Governor Bullock issued a formal policy concerning his use of state aircraft which expressly acknowledged that "the Governor's Office must remain a careful steward of public resources."

28. A true and correct copy of Governor Bullock's "Policy Concerning the Use of State Aircraft" (dated March 17, 2016) is attached as **Exhibit 1**.

29. On August 24, 2016, Representative Tschida appeared at a press conference at the State Capitol in Helena with Greg Gianforte, the Republican nominee for governor and then-Representative Ryan Osmundson.

30. All three criticized Governor Bullock's repeated use of state aircraft for political purposes, which Representative Tschida called an "affront" to all Montanans.

*2. Defendant Motl's Interview on KGVO on September 12, 2016*

31. On or about September 12, 2016, Defendant Motl was interviewed by KGVO, a talk radio station in Missoula.

32. A true and correct transcript of the interview is attached as **Exhibit 2**.[1]

33. When asked during the interview about a "government official" KGVO was investigating for receiving free concert tickets, Defendant Motl mentioned Montana's ethics statute and cited a specific provision of the statute "just in case there's some lawyer out there listening."

34. He further stated that ethics complaints should be filed with his office.

---

[1] An audio recording of this interview can be found at <http://newstalkkgvo.com/bullock-and-oleary-concert-tickets-could-be-state-ethics-violation-mt-political-practices-commissioner-explains/>

*3. Representative Tschida's Ethics Complaint Alleging Misconduct by Governor Bullock and Director O'Leary*

35. On or about September 19, 2016, Defendant received an ethics complaint from Representative Tschida naming Governor Bullock and Director Meg O'Leary as respondents.

36. The complaint arose from Governor Bullock's illegal use of state-owned aircraft to fly him and Director O'Leary to a concert in Missoula in August 2014.

37. Governor Bullock and Director O'Leary attended the concert at the invitation of University of Montana President Royce Engstrom and Mary Engstrom, who invited "you and a guest to join them in the President's Box to watch Sir Paul McCartney as he performs his 'Out There' concert."

38. The use of state-owned aircraft by Governor Bullock and Director O'Leary, as well as their acceptance of seating in the President's Box to attend the concert, constituted illegal gifts under Montana law that neither Bullock nor O'Leary disclosed to the public.

39. Representative Tschida filed an amended ethics complaint on or about September 20, 2016.

40. Defendant Motl ordered him not to disclose the existence of the complaint based upon the gag rule in § 2-2-136(4), MCA.

41. On or about September 23, 2016, Andrew Huff, who serves as Legal Counsel to Governor Bullock and is a state-paid employee, placed a telephone call to Defendant Motl on behalf of Governor Bullock.

42. During that call, Mr. Huff requested an extension to respond to the complaint, which Defendant Motl granted.

43. Representative Tschida was concerned about what appeared to be yet another misuse of state resources by Governor Bullock for personal purposes – the use of a state-paid attorney to represent Governor Bullock in an ethics proceeding.

44. On October 24, 2016, Senator Dee Brown and Senator Bob Keenan, both members of the Montana Senate, sent a letter to Representative Tschida and other legislators seeking support for an investigation of allegations by state employees of misuse of state funds by the Bullock Administration as well as retaliation against state employees for blowing the whistle.

45. A true and correct copy of this letter is attached as **Exhibit 3**.

46. Their letter outlined numerous incidents of misuse of state resources by the Bullock Administration as well as reports of retaliation against state employees, such as:

- Former internal agency auditors being discouraged from investigating fraudulent payments;

- Seven long-tenured auditors of the Department of Public Health and Human Services (DPHHS) being fired after raising red flags about agency activity;

- DPHHS auditors being bullied by state officials after speaking up about potentially fraudulent payments made to undocumented welfare recipients;

- Employees being stripped of responsibilities, isolated from colleagues and eventually being forced into retirement after refusing to perform fraudulent acts;

- Officials accusing competent employees of insubordination as a means of getting rid of those who blow the whistle;

- Auditors being discouraged or prevented from fully investigating questionable transactions, sometimes through bullying;

- Confidential settlement payments being made to former state employees since January of 2013 as well as allegations that some of the settlements were the result of wrongful termination complaints brought against the state.

47. Representative Tschida responded on November 2, 2016, to the letter and confirmed his support for an investigation.

48. A true and correct copy of Representative Tschida's response is attached as **Exhibit 4**.

49. He included with that response a copy of his ethics complaint.

*4. Defendant Motl's Threat to Criminally Prosecute Representative Tschida*

50. On November 3, 2016, KGVO interviewed Defendant Motl again.

51. A true and correct transcript of this interview is attached as **Exhibit 5**.[2]

52. Defendant Motl was identified during the interview as the Commissioner of Political Practices.

---

[2] An audio recording of this interview can be accessed at <youtube.com/watch?v=cXXUIL49QSM>

53. He used a state-owned telephone to communicate during the interview.

54. The interview was recorded during regular business hours.

55. Defendant declared during the interview that Representative Tschida's disclosure of his ethics complaint occurred "in the last days of a campaign, which I think magnifies the seriousness of what he did."

56. He also exclaimed that "it's just outrageous that he did what he did at the time that he did it."

57. Defendant also accused Representative Tschida of having "personal responsibility for his actions; and so he'll need to deal with the consequences of breaking state law."

58. The following colloquy then occurred:

| | |
|---|---|
| Interviewer: | And what are those consequences? |
| Defendant Motl: | There's, uh, the main consequence that befalls an official who, um, violates a mandatory duty is official misconduct. |
| Interviewer: | And that would be a charge in civil court? |
| Defendant Motl: | No, it's criminal court. |
| Interviewer: | It's a criminal court charge? |
| Defendant Motl: | Yes. |

59. Representative Tschida filed his original complaint in this Court on November 4, 2016 – the day after the interview.

60. Defendant responded by telling the Associated Press that "What we've got here is a pretty serious magnification of an original improper action by Mr. Tschida."

61. A true and correct copy of the Associated Press story is attached as **Exhibit 6**.

62. Defendant also told the Associated Press that undersigned counsel "didn't improve Mr. Tschida's situation. He made it worse. And now he's involved in it himself."

63. Defendant Motl also told the Associated Press that "the appropriateness or inappropriateness of anyone's actions will be straightened out afterward," and "[y]ou can't have people filing ethics complaints in the heat of elections, and then deciding they're going to break the laws regarding those ethics complaints unilaterally."

64. On November 7 at approximately 7:30 a.m. -- the day before Election Day -- Defendant transmitted an email to approximately 90 Montana legislators "reminding" them that ethics complaints are confidential by law.

65. A true and correct copy of this email is attached as **Exhibit 7**.

66. The day after Election Day, Defendant executed a declaration admitting that he had not filed, and does not plan to file, a criminal complaint with a county attorney regarding Representative Tschida's distribution of the ethics complaint.

67. A true and correct copy of this declaration is attached as **Exhibit 8**.

68. Defendant stated further that he would not act on an ethics complaint filed against Representative Tschida, or initiate a complaint on his own, "while this lawsuit is pending."

69. On or about November 21, 2016, Defendant Motl issued a decision dismissing Representative Tschida's ethics complaint.

70. True and correct copies of the decision and documents attached by Defendant to the decision are attached as **Exhibit 9**.

71. In that decision, Defendant declared Representative Tschida's complaint to be "frivolous" due in part to his "intent to embarrass the target of the Complaint."

72. In response to Defendant Motl's threats, Representative Tschida refrained from further communications with legislators concerning Governor Bullock's misconduct until Defendant dismissed the ethics complaint.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**The Gag Rule in § 2-2-136(4), MCA, Violates the Free Speech Clause of the First Amendment to the United States Constitution**

73. All previous paragraphs are incorporated by reference.

74. The gag rule in § 2-2-136(4), MCA, is a content-based restriction on speech and subject to strict scrutiny, *Citizens United v. FEC*, 558 U.S. 310, 340

(2010), particularly given that the speech at issue describes corruption by a governor and other high officials of the state. *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 606 (1976) (Brennan, J., concurring) ("Commentary on the fact that there is strong evidence implicating a government official in criminal activity goes to the very core of matters of public concern").

75. The gag rule is not necessary to advance any compelling interest and is not narrowly tailored.

76. The gag rule therefore violates the Free Speech Clause of the First Amendment to the United States Constitution both on its face and as applied to Representative Tschida.

## SECOND CLAIM FOR RELIEF

**Defendant Retaliated Against Representative Tschida For Exercising His Right to Free Speech Under the First Amendment to the United States Constitution**

77. All previous paragraphs are incorporated by reference.

78. The First Amendment prohibits government officials from subjecting a citizen to threats of criminal prosecution or other retaliatory actions in response to protected speech.

79. Representative Tschida engaged in protected speech throughout 2016 when he criticized Governor Bullock's misuse of state aircraft.

80. He again engaged in protected speech on November 2, 2016, when he disclosed an ethics complaint to fellow legislators containing allegations that Governor Bullock and Commerce Director O'Leary misused state resources and accepted illegal gifts when accompanying each other on junkets.

81. The following day, Defendant stated in an interview with KGVO radio that Representative Tschida's disclosure of his ethics complaint would result in criminal charges.

82. Defendant Motl conducted the interview on a state-owned telephone during normal business hours and was identified during the interview as the Commissioner of Political Practices.

83. Defendant therefore acted under color of state law when he declared that Representative Tschida would be criminally prosecuted.

84. Defendant's threats of criminal prosecution would chill a person of ordinary firmness from continuing to engage in protected speech.

85. Defendant therefore violated Representative Tschida's clearly established First Amendment rights.

86. Defendant's actions were oppressive because Defendant violated Representative Tschida's rights with unnecessary harshness and severity by abusing and corrupting his authority as Commissioner of Political Practices.

87. Defendant's actions were malicious because they were performed for the purpose of injuring Representative Tschida's right to free speech in order to silence him during the final week of the 2016 gubernatorial campaign from discussing misconduct by Governor Bullock and Director O'Leary.

88. Representative Tschida is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

**Defendant Retaliated Against Representative Tschida For Exercising His Right to Free Speech Under Article II, § 7 of the Montana Constitution**

89. All previous paragraphs are incorporated by reference.

90. Article II, § 7, of the Montana Constitution states in pertinent part that "No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty."

91. This constitutional provision prohibits Montana officials from subjecting an individual to retaliatory actions, including threats of criminal prosecution, for engaging in protected speech.

92. Representative Tschida engaged in protected speech throughout 2016 when he criticized Governor Bullock's misuse of state aircraft.

93. He again engaged in protected speech on November 2, 2016, when he disclosed an ethics complaint to fellow legislators containing allegations that Governor Bullock and Director O'Leary misused state resources and accepted illegal gifts when accompanying each other on junkets.

94. The following day, Defendant stated in an interview with KGVO radio that Representative Tschida's disclosure of his ethics complaint would result in criminal charges.

95. Defendant's threats of a criminal prosecution would chill a person of ordinary firmness from continuing to engage in protected speech.

96. Defendant's actions were oppressive because Defendant violated Representative Tschida's rights with unnecessary harshness and severity by abusing and corrupting his authority as Commissioner of Political Practices.

97. Defendant's actions were malicious because they were performed for the purpose of injuring Representative Tschida's right to free speech in order to silence him during the final week of the 2016 gubernatorial campaign from discussing misconduct by Governor Bullock and Director O'Leary.

98. Representative Tschida is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**The Gag Rule in § 2-2-136(4), MCA, Violates the Speech & Debate Clause of Article V, § 8 of the Montana Constitution As Applied to Speech By Legislators in a Legislative Capacity**

99. All previous paragraphs are incorporated by reference.

100. The Speech and Debate Clause of Article V, § 8 of the Montana Constitution protects the right of legislators to communicate with fellow legislators concerning matters that are inherently legislative in nature.

101. The Speech and Debate Clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch. It thus protects Members against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. United States*, 408 U.S. 606, 616 (1972).

102. The Speech and Debate Clause preempts statutory confidentiality provisions. See, *e.g., Gravel*, 408 U.S. at 616 (Speech and Debate Clause immunized senator's disclosure in Senate sub-committee of classified documents that exposed government's false statements to the public about the Vietnam conflict).

103. The Speech and Debate Clause applies not only to speeches made by members during floor debates and committee hearings, but also to written correspondence between members concerning matters that are inherently

legislative in nature.  See, *e.g., Ray v. Proxmire*, 581 F.2d 998, 1000 (D.C. Cir. 1978).

104. Representative Tschida's communication to his fellow legislators concerning misuse of state resources by Governor Bullock and Director O'Leary was inherently legislative in nature.

105. Representative Tschida's communication is therefore protected by the Speech and Debate Clause.

106. Defendant's threats to criminally prosecute Representative Tschida for speech with fellow legislators regarding Governor Bullock's and Director O'Leary's misuse of state resources violates the Speech and Debate Clause.

## PRAYER FOR RELIEF

WHEREFORE, Representative Brad Tschida respectfully requests the following relief from this Court:

As to the First Claim for Relief, Representative Tschida respectfully requests (1) a declaration that the gag rule in § 2-2-136(4), MCA is unconstitutional on its face and as applied to Representative Tschida, (2) an injunction prohibiting enforcement of the gag rule in § 2-2-136(4), MCA; (3) An award of nominal damages, (4) an award to Representative Tschida of costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and (5) any

other relief to which Representative Tschida may be entitled, or as this Court deems necessary and proper.

As to the Second, Third, and Fourth Claims for Relief, Representative Tschida respectfully requests (1) an award of compensatory and punitive damages as determined by a jury, (2) an award to Representative Tschida of costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and (3) any other relief to which Representative Tschida may be entitled, or as this Court deems necessary and proper.

DATED: December 5, 2016      Respectfully submitted,

/s/ Matthew G. Monforton
Matthew G. Monforton
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Representative Tschida respectfully requests a trial by jury on all issues so triable.

DATED: December 5, 2016      Respectfully submitted,

/s/ Matthew G. Monforton
Matthew G. Monforton
Attorney for Plaintiff

## VERIFICATION BY BRAD TSCHIDA

I, Brad Tschida, declare as follows:

1. I am a Plaintiff in this matter.

2. I have reviewed the attached Amended Complaint and declare that the facts and allegations contained therein are true and the exhibits attached thereto are accurate copies of the originals.

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Declaration are true and correct.

Executed on December ___4___, 2016, in Missoula, Montana

Brad Tschida
Declarant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 5th day of December, 2016, that a copy of the foregoing will be delivered this day via the Court's ECF system to counsel for the Defendant.

DATED: December 5, 2016    Respectfully submitted,

<u>/s/ Matthew G. Monforton</u>
Matthew G. Monforton
Attorney for Plaintiff