**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| BRAD TSCHIDA, | **CV-16-102-H-BMM** |
| Plaintiff, | |
| vs. | |
| | **ORDER** |
| JONATHAN MOTL, | |
| Defendant. | |

Defendant Motl moves this Court to dismiss Plaintiff Tschida's second, third, and fourth claims, and all claims for damages. (Doc. 26.) Motl argues that federal common law entitles him to qualified immunity for Tschida's second claim, and that Montana law provides qualified immunity for Tschida's third and fourth claims. Motl argues that damages are not available against him in his official capacity under 42 U.S.C. § 1983.

## I.    BACKGROUND

Tschida serves as an elected member of the Montana House of Representatives from Missoula. (Doc. 15 at 5.) In September 2016, Tschida filed a complaint with Montana Commissioner of Political Practices Jonathan Motl

alleging ethics violations against Montana Governor Steve Bullock and Montana Commerce Director Meg O'Leary. *Id.* at 7. Tschida alleges that Motl "ordered him not to disclose the existence of the complaint" under the confidentiality provision of Mont. Code Ann. § 2-2-136(4). *Id.*

The confidentiality language provides that a complaint, and records obtained or prepared by the commissioner in connection with an investigation or complaint, constitute confidential documents typically not open for public inspection. Mont. Code Ann. § 2-2-136(4). More specifically, the statute provides that "[t]he complainant and the person who is the subject of the complaint shall maintain the confidentiality of the complaint and any related documents released to the parties by the commissioner until the commissioner issues a decision." *Id.* The subject of a complaint may waive, in writing, however, the right of confidentiality. *Id.* The commissioner must open the complaint and any related documents for public inspection upon the filing of a waiver. *Id.*

Motl did not act on Tschida's complaint in September or October. (Doc. 15 at 3.) Tschida disclosed his ethics complaint to fellow legislators on November 2, 2016, in response to a letter seeking support for an investigation into alleged misuse of state resources by the Bullock Administration. *Id.* at 8-9. He emailed a copy of his complaint to a group of legislators. *Id.* at 9.

The next day, November 3, 2016, Motl fielded questions about Tschida's disclosure during a radio interview. *Id.* at 9-10. Motl expressed his concern that "Mr. Tschida, as a sitting legislator, chose to violate a specific section of state statute and he did it in the last days of a campaign, which I think magnifies the seriousness of what he did." (Doc. 15-5 at 1.)

The interviewer asked Motl whether the disclosure by Tschida would affect the processing of the complaint, to which he responded, "[i]t doesn't affect the complaint that is filed. [Tschida] has personal responsibility for his actions, and so he'll need to deal with the consequences of breaking state law." *Id.* at 2. The interviewer then asked, "[a]nd what are those consequences?" *Id.* Motl replied, "[t]here's, uh, the main consequence that befalls an official who, um, violates a mandatory duty is official misconduct," referring to Mont. Code Ann. § 45-7-401. *Id.* The interviewer asked whether that would be a civil claim, to which Commissioner Motl responded, "[n]o, it's criminal court." *Id.*

Tschida refrained from speaking further about Governor Bullock or the ethics complaint that he had filed during the remaining five days before Election Day. (Doc. 15 at 12.) The day before Election Day, Motl replied to all of the recipients of an email from Tschida's attorney, including around 90 legislators, reminding them that "ethics complaints are confidential by law." *Id.* at 11; Doc. 27 at 11; *see also* Doc. 31 at 15.

The day after Election Day, November 9, 2016, Motl executed a declaration with this Court in which he attested that he had not filed, and did not intend to file, a complaint with a county attorney regarding Tschida's disclosure of the complaint. (Doc. 27 at 9.) He further attested that he would neither act on, nor initiate, an ethics complaint filed against Tschida during the pendency of this action. *Id.*

Motl dismissed Tschida's ethics complaint against Governor Bullock on or about November 21, 2016. (Doc. 15 at 12.) Motl evaluated the complaint as "frivolous." (Doc. 15-9 at 6.) The dismissal of Tschida's complaint lifted the confidentiality requirement. *Id.* at 8.

## II.     CLAIMS

Tschida asserts four claims for relief. Tschida first alleges that the confidentiality provision in Mont. Code Ann. § 2-2-136(4), violates the free speech clause of the First Amendment to the United States Constitution. (Doc. 15 at 12-13.) This claim forms the focus of the parties' cross motions for summary judgment. (Docs. 18, 30.) The Court addresses the cross motions for summary judgment in a separate order. Tschida requests an award of nominal damages for his First Amendment claim. (Doc. 15 at 18.) Defendant's motion to dismiss at issue here does not implicate Tschida's First Amendment claim.

Second and third, Tschida alleges that Motl retaliated against him for exercising his right to free speech under both the First Amendment of the United States Constitution and Article II, §7 of the Montana Constitution. *Id.* at 13-16. Finally, Tschida alleges that the confidentiality provision in Mont. Code Ann. § 2-2-136(4), violates the speech and debate clause of Article V, § 8 of the Montana Constitution, as applied to speech by legislators in a legislative capacity. *Id.* at 17-18. On these claims, Tschida requests an award of compensatory and punitive damages as determined by a jury, and costs of litigation, including reasonable attorneys' fees and expenses. *Id.* at 19.

### III.   STANDARDS FOR DISMISSAL

A court must dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). The Court must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co*, 80 F.3d 336, 338 (9th Cir. 1996).

The doctrine of qualified immunity applies to "government officials performing discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine generally shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

An official who relies on a statute that a reasonable official could believe to be constitutional remains immune from liability, even if the statute is later determined to be unconstitutional. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Similarly, Montana statutory law shields from civil liability an officer, agent, or employee of a governmental entity who acts in good faith in enforcing a law and without malice or corruption "and that law is subsequently declared invalid as in conflict with the constitution of Montana or the constitution of the United States." Mont. Code Ann. § 2-9-103(1).

When a defendant asserts qualified immunity in a Rule 12(b)(6) motion to dismiss, "dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal quotation omitted). This determination involves two inquires: "'(1) whether, taken in the light most favorable to the party asserting injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.'" *Krainski v. Nevada ex rel. Bd of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Court may begin the qualified immunity analysis by considering first "whether there is a violation of clearly established law without determining

whether a constitutional violation occurred." *Krainski*, 616 F.3d at 969 (citing

*Pearson v. Callahan*, 555 U.S. 223, 241-242 (2009)). University police arrested

Krainski based on statements from university staff and a student that Krainski had

attacked another student with a pair of scissors. *Krainski*, 616 F.3d at 966-967. The

arrest prompted university officials to place a disciplinary notation on Krainski's

transcript. *Id.*

Krainski sued the university and various officials based, in part, on her claim

that the disciplinary notation violated her substantive due process rights. *Id.* at 967.

The Ninth Circuit addressed only the second prong of the qualified immunity

analysis of whether the placement of the disciplinary notation on Krainski's

transcript by university officials clearly gave rise to a substantive due process

violation in light of the specific context of the case. The Ninth Circuit rejected the

idea and agreed with the district court that the university officials enjoyed qualified

immunity. *Id.* at 970.

The Supreme Court in *Pearson* previously had deviated from the two-step

sequence of *Saucier*. The Court determined that courts "should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of circumstances in the

particular case at hand." *Pearson*, 555 U.S. at 236. The Court reasoned that strictly

following *Saucier's* two-step analysis "departs from the general rule of

constitutional avoidance." *Id.* at 241. To require courts to address the violation of a constitutional right would run counter to the "older, wiser judicial counsel 'not to pass on questions of constitutionality … unless such adjudication is unavoidable.'" *Id.* quoting *Scott v. Harris*, 550 U.S. 372, 388 (2007) (Breyer, J., concurring) (quoting *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)). This approach applies here.

The Court will analyze whether Tschida seeks to vindicate a clearly established right. A right is clearly established when its "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court first must "define the contours of the right allegedly violated in a way that expresses what is really being litigated," before determining whether a constitutional right was clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158 (9th Cir. 2000). The Court should define the right in a way that is neither "too general" nor "too particularized." *Id.*

The Court does not require a "case directly on point" to determine whether a right is clearly established, rather "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court attached qualified immunity to a defendant where the plaintiff asserted that a reasonable arrest pursuant to a material-witness warrant

8

was unconstitutional. *Id.* This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (affirming qualified immunity for state trooper who applied for arrest warrants).

## IV.   DISCUSSION

The parties do not dispute that Motl performed discretionary functions of his office as Commissioner of Political Practices at the time that he made his comments in the radio interview. *See Harlow*, 457 U.S. at 818. The Court first examines how to define properly the allegedly violated right at issue here. *LSO*, 205 F.3d at 1158. The Court then examines whether that right was clearly established. *See O'Brien*, 818 F.3d at 936; *Pearson*, 555 U.S. at 241-242.

### A. *What right of Tschida's did Motl allegedly violate?*

Not surprisingly, Motl frames Tschida's allegedly violated right narrowly, while Tschida frames his right broadly. Motl frames the issue as "the right of a complainant to distribute an ethics complaint prior to a probable cause determination was not 'clearly established.'" (Doc. 27 at 16.) Tschida contends that the "appropriate question is whether a citizen has a First Amendment right to publish criticism of government officials without being threatened by a prosecutor with criminal sanctions." (Doc. 36 at 16.)

Qualified immunity is not meant to be analyzed in terms of a "'general constitutional guarantee,'" but rather the application of general constitutional principles "'in a particular context.'" *LSO*, 205 F.3d at 1158 (quoting *Todd v. United States*, 849 F.2d 365, 370 (9th Cir. 1988)). The Court must define the allegedly violated right "'at the appropriate level of specificity before a court can determine if it was clearly established.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

On the other hand, casting an allegedly violated right too particularly, "'would be to allow [the Officials], and future defendants, to define away all potential claims.'" *LSO*, 205 F.3d at 1158 (quoting *Kelly v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)). The appropriate level of specificity "define[s] the contours of the right allegedly violated in a way that expresses what is really being litigated." *LSO*, 205 F.3d at 1158.

In *LSO*, Lifestyles Organization, Limited ("LSO"), an organization that hosts an annual erotic art exhibition, alleged that California Department of Alcoholic Beverage Control officials discriminated against it. *LSO*, 205 F.3d at 1150. LSO alleged that the department threatened the host convention center with the loss of its liquor license if it allowed LSO to display its art on its premises. *Id.* LSO broadly cast the allegedly violated right at issue as "the right to be free from content-based discrimination." *Id.* at 1158. The Ninth Circuit reframed the issue

more specifically to whether "it was clear that LSO had the right to exhibit non-obscene art on the premises of an [Alcoholic Beverage Control] licensee free of interference from state officials, even though some of the art fell within the proscriptions of a state liquor regulation governing expressive content at licensed establishments." *Id.*

The Court determined that the department officials were not entitled to qualified immunity because "no reasonable official could have believed that [the state liquor regulation] could constitutionally be employed to impede LSO's right to display non-obscene art on the premises of an ABC licensee." *Id.* at 1160.

The plaintiff in *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir. 1993), an HIV-positive inmate who was segregated from the general prison population, argued generally that "prison inmates have First Amendment rights, including freedom of association." The Ninth Circuit determined instead that the "relevant, properly particularized question" was whether "it was clearly established that inmates are entitled to be free from prison regulations that restrict their association with members of the general prison population." *Camarillo*, 998 F.2d at 640. The Court determined that the prison officials had not violated a clearly established constitutional right. *Id.* The Court held that the district court should have granted summary judgment for the defendants based on qualified immunity. *Id.*

Prison guards in *Kelley v. Borg*, 60 F.3d 664, 665-66 (9th Cir. 1995), allegedly failed to provide care to an inmate after he reported noxious fumes in his cell. The fumes later rendered the inmate unconscious. *Kelley*, 60 F.3d at 666. The defendants narrowly posited the right at issue: "[D]id plaintiff, after complaining about foul smells, have a clearly established right, then or now, for defendant correctional officers to immediately remove him from his cell in the Security Housing Unit during a lock down, when they first were required to at least inform their superior officer that they needed to remove an inmate, be it any inmate, from his cell?" *Id*. at 667.

The Ninth Circuit recognized that framing the issue with reference to such specifically detailed facts would permit defendants "to define away all potential claims." *Id*. The Court determined that the magistrate judge correctly had defined the prisoner's right, under the Eighth Amendment, to have prison officials not be "deliberately indifferent to serious medical needs." *Id.* at 666. The Court also affirmed the magistrate judge's ruling that the right was clearly established, and, therefore, qualified immunity was not available to the officials. *Id.*

The Ninth Circuit rejected formulations in each case, *LSO*, *Camarillo*, and *Kelley*, that failed to "express[] what is really being litigated." *LSO*, 205 F.3d at 1158. Courts have defined the right at issue more appropriately in two similar cases that provide helpful insight to this analysis. *See Landmark Communications,*

*Inc. v. Virginia*, 435 U.S. 829 (1978); *Stilp v. Contino*, 613 F.3d 405 (3d Cir. 2010).

The Supreme Court framed the question in *Landmark* as "whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the Judicial Inquiry and Review Commission." *Landmark*, 435 U.S. at 837. The Court recognized the chilling effect of potential criminal prosecutions against third-parties under these circumstances. The Supreme Court set forth in an appendix that 49 jurisdictions had established some mechanism to inquire into judicial misconduct. *Id.* at 846 (Appendix). With the sole exception of Puerto Rico, all of the other jurisdictions imposed some type of confidentiality requirement. *Id.* The concept of confidentiality of these complaints warranted little discussion by the Court. In fact, the Court noted "that more than 40 states having similar commissions have not found it necessary to enforce confidentiality by use of criminal sanctions against nonparticipants." *Id*. at 841. This threat of criminal sanctions against third-parties for violating confidentiality prompted the Supreme Court to determine, however, that the statute at issue violated the First Amendment. *Id.* at 845.

The Third Circuit defined the issue in *Stilp* as "whether, under the First Amendment, the state may subject Stilp to civil sanction or criminal punishment

13

for publicly disclosing his own complaint and the fact that he has filed it—or intends to file it—with the State Ethics Commission." *Stilp*, 613 F.3d at 406. Stilp fancied himself as a government watchdog who took great pride in "publicly protesting actions of public officials with Pennsylvania state government." *Id.* Stilp sought to publicize the fact that he would be filing a complaint with the state ethics commission. *Id.* The court ultimately determined that the confidentiality statute at issue violated the First Amendment. *Id.* at 415.

These cases demonstrate that Tschida frames the issue too broadly. The parties do not dispute whether a First Amendment right to criticize the government exists. It does. Mont. Code Ann. § 2-2-136(4), does not prohibit speech critical of government officials. The statute does not bar complainants from publicly expressing the substance of their allegations. The matter at issue involves whether Tschida possessed a clearly established right to speak publicly about the fact that he had filed an ethics complaint in light of the confidentiality provision in Mont. Code Ann. § 2-2-136(4). This provision prohibits public disclosure before a probable cause determination. *Id.* This framing of the issue gets to the heart of the matter being litigated. *LSO*, 205 F.3d at 1158.

**B. Was Tschida's right to speak publicly about the fact that he had filed an ethics complaint clearly established in light of a statute that prohibits disclosure?**

Motl asserts that Tschida possessed no clearly established right to disclose the filing of his ethics complaint before a probable cause determination. (Doc. 27 at 17.) Motl argues that he was "entitled to rely on duly-enacted statutes." *Id.* He asserts that he reasonably believed the constitutionality of Mont. Code Ann. § 2-2-136. *Id.* The Montana Legislature originally passed the statute in 1995. The legislature amended Section (4) in 1997 and 2001. Section (4)'s constitutionality has not been challenged before this case. The parties aim to determine the constitutionality of the statute in their cross motions for summary judgment.

No Supreme Court precedent exists on this exact issue. *Landmark's* focus on criminal punishment of third parties who divulge information from confidential judicial conduct proceedings differs from Montana's confidentiality provision that applies directly to the person who filed the complaint. *Landmark*, 435 U.S. at 837. Ninth Circuit precedent, *Lind v. Grimmer*, 30 F.3d 1115 (9th Cir. 1994), likewise differs. There the statute at issue related to campaign finance complaints and required confidentiality throughout the entire process—permanently if the commission found no probable cause. *Lind*, 30 F.3d at 1117. Montana's ethics complaint statute requires confidentiality only until a probable cause determination can be made. Mont. Code Ann. § 2-2-136(4).

Other jurisdictions have reached differing outcomes on confidentiality

provisions in ethics and judicial conduct statutes. For example, the Third Circuit in

*Stilp* upheld an injunction that foreclosed future enforcement of a statute that

allowed for civil and criminal punishment for violating confidentiality

requirements of an ethics investigation on basis that it violated the First

Amendment. *Stilp*, 613 F.3d at 415. The confidentiality provision subjected a

violator to "civil sanction or criminal punishment" for publicly disclosing his own

complaint. *Id.* at 406. The criminal penalty allowed for up to five years of

imprisonment. *Id.* at 407.

The Second Circuit took a different approach in *Kamasinski v. Judicial

Review Council*, 44 F.3d 106 (2d Cir. 1994). The court determined that a statute

that prohibited disclosure of a judicial misconduct complaint before the

commission could make a probable cause determination comported with the First

Amendment. *Kamasinski*, 44 F.3d at 111. The Second Circuit recognized as

compelling the state's asserted interests in preventing harassment of judges from

frivolous complaints and encouraging inferior or incompetent judges to resign

voluntarily. *Id.*

The Court agrees that Motl reasonably relied on the constitutionality of the

statute under these circumstances. Similar to the Connecticut statute in

*Kamasinski*, Montana's confidentiality provision applies only until the

Commissioner makes a probable cause determination. Mont. Code Ann. § 2-2-136(4). This limited rule seeks to balance the speaker's First Amendment rights with the need to protect public officials from frivolous complaints. *See* Mont. Code Ann. § 2-2-136(1)(b), (4); *Kamasinski*, 44 F.3d at 108, 111. Tschida's right to speak publicly about his ethics complaint before a probable cause determination remains subject to debate in light of the limited confidentiality provision of Mont. Code Ann. § 2-2-136(4). *See Ashcroft*, 563 U.S. at 741.

Resolution of this debate will require the Court to analyze the confidentiality provision in light of the Ninth Circuit's decision in *Lind*, and decisions by other courts in *Stilp*, *Kamasinski*, and *Landmark*. At this stage, however, the Court needs to determine only whether the constitutionality of the confidentiality provision in Montana's public ethics statute remains subject to debate. Tschida argues that Motl's threat of criminal prosecution "greatly exceeded the bounds of § 2-2-136" and thereby moves Motl's conduct beyond the bounds of qualified immunity. (Doc. 36 at 21.) This inquiry seems to lie outside the scope of the Ninth Circuit's two-part *O'Brien* test for qualified immunity. *O'Brien*, 818 F.3d at 936; *Krainski*, 616 F.3d at 968. The Court nevertheless will address it.

The Ninth Circuit has determined that an official "who acts in reliance on a duly-enacted statute . . . is ordinarily entitled to qualified immunity." *Grossman*, 33 F.3d at 1209. The Court noted, however, that an official enforcing a statute in "a

particularly egregious manner," or a manner in which a reasonable official "would recognize exceeds the bounds" of a statute will not be entitled to immunity even if no clear case law has declared the ordinance or the official's particular conduct unconstitutional. *Id.* at 1210.

Portland police officers in *Grossman* arrested and handcuffed Grossman for violating a city ordinance by protesting in a public park without a permit. *Id.* at 1202. Grossman sued the city and arresting officer for violating his First Amendment right to free speech. *Id.* The Ninth Circuit determined that the ordinance violated the First Amendment. *Id.* at 1207-08. The Court also determined, however, that the officer was entitled to qualified immunity because his actions were "'objectively legally reasonable'" under the ordinance. *Id.* at 1210 (quoting *Harlow*, 457 U.S. at 819.) Given the existence of the ultimately invalidated city ordinance, Grossman did not possess a clearly established First Amendment right to protest in the park without a permit. Tschida too lacks a clearly established First Amendment right to disclose his ethics complaint in light of the confidentiality provision. Mont. Code Ann. § 2-2-136(4).

The Ninth Circuit in *Tarabochia v. Adkins*, 766 F.3d 1115 (9th Cir. 2014), rejected a claim that Washington Department of Fish and Wildlife officers enjoyed qualified immunity when they violated a fisherman's clearly established Fourth Amendment right to be free from an unreasonable search. The officers stopped a

commercial fisherman's truck on a public highway to check for compliance with fish and game laws without reasonable suspicion that he had violated any such law. *Tarabochia*, 766 F.3d at 1127. The statutes on which the officers relied for their assertion of qualified immunity authorized warrantless administrative searches, but did not provide for vehicle stops. *Id.* The officers could not rely upon the statutes to immunize their actions. *Id.*

Tschida argues that, like the fish and wildlife officers in *Tarabochia*, Motl exceeded the scope of his authority under Mont. Code Ann. § 2-2-136, by speaking about the ethics complaint during the interview. It appears, however, that Motl stayed within the proscriptions of Mont. Code Ann. § 2-2-136(5). This section provides that the commissioner "may issue statements or respond to inquiries to confirm that a complaint has been filed, to identify against whom it has been filed, and to describe the procedural aspects and status of the case." Mont. Code Ann. § 2-2-136(5). Motl responded to the interviewer's inquiries. Motl confirmed that Tschida's complaint had been filed. And Motl commented on the procedure and status of the case.

Tschida also argues that Motl's threat of criminal sanctions overstepped his authority to penalize violations of the statute. Under Mont. Code Ann. § 2-2-136(2)(a), violations of the confidentiality provision could result in an administrative penalty in the range of $50 to $1,000. Tschida correctly notes that

Mont. Code Ann. § 2-2-136, provides the Commissioner no authority to pursue an official misconduct prosecution or to impose criminal sanctions for violations of the confidentiality statute.

Motl never represented, however, that he could or would prosecute Tschida for official misconduct. Motl's comments that Tschida *could be* subject to punishment under the official misconduct statute, despite his inability to personally pursue such prosecution, appears to comport with the statutory scheme. Mont. Code Ann. § 45-7-401, provides that a public servant who "knowingly performs an act in an official capacity that the public servant knows is forbidden by law" could be charged with official misconduct. Tschida's intentional disclosure of the existence of his ethics complaint, knowing of the prohibition on disclosure contained in Mont. Code Ann. § 2-2-136(4), potentially raises the question of official misconduct.

The Court may question Motl's judgment in commenting about the potential consequences of Tschida's disclosure of his ethics complaint given the circumstances of a high profile election season and his significant position as Commissioner of Political Practices. Officials enjoy "breathing room," however, to make "reasonable but mistaken judgments." *Aschroft*, 563 U.S. at 741. Motl's discussion regarding the potential consequences of official misconduct falls within the realm of correct and reasonable, but potentially mistaken judgments. *Id.*

## V.    CONCLUSION AND ORDER

Tschida lacked a clearly established constitutional right to speak about the existence of his ethics complaint. The statute calls for confidentiality. The confidentiality provision has never been challenged or ruled unconstitutional. The cloak of qualified immunity attached to Motl in this case.

Accordingly, IT IS ORDERED that Defendant's Motion to Dismiss (Doc. 26) is GRANTED. Plaintiffs second, third, and fourth claims are DISMISSED WITH PREJUDICE.

DATED this 18th day of April, 2017.

Brian Morris
United States District Court Judge