

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

BRAD TSCHIDA,

Plaintiff,

vs.

JEFF MANGAN, in his official
capacity as the Commissioner of
Political Practices, and JONATHAN
MOTL, in his personal capacity,

Defendants.

**CV-16-102-H-BMM**

**ORDER**

## INTRODUCTION

The parties have filed cross-motions for summary judgment. (Docs. 66; 69.)

The Court conducted a hearing on December 8, 2017. (Doc. 84.) Plaintiff Brad

Tschida ("Tschida") alleges that the confidentiality requirement of Mont. Code

Ann. § 2-2-136(4) violates the First Amendment. (Doc. 71 at 6.) Defendant Jeff

Mangan currently serves as Montana's Commissioner on Political Practices. (Doc.

67 at 1.) Mangan's predecessor, Jonathan Motl, served as Commissioner from June

10, 2013 to May 14, 2017. (Doc. 65 at 1.) The Court will refer collectively to the

two officials as "Commissioner" for purposes of brevity.

## BACKGROUND

Tschida serves as an elected member of the Montana House of
Representatives from Missoula (Doc. 15 at 5.) Tschida filed an ethics complaint
with the Commissioner on September 19, 2016. (Doc. 15-9 at 1.) The
Commissioner confirmed receipt of the first ethics complaint and informed
Tschida of the confidentiality requirement of Mont. Code Ann. § 2-2-136(4) in a
letter dated September 19, 2016. (Doc. 15-9 at 14.)

Tschida filed an amended ethics complaint on September 21, 2016. (Doc.15-
9 at 2.) The Commissioner confirmed receipt of the amended ethics complaint in a
letter to Tschida dated September 21, 2016. (Doc. 15-9 at 23.) The
Commissioner's letter again stressed the confidentiality requirement. (Doc. 15-9 at
23.) The original and amended ethics complaints alleged violations of the Montana
Code of Ethics by Governor Steve Bullock and Meg O'Leary, the Director of the
Montana Department of Commerce. (Doc. 15-9 at 1.)

Despite these warnings, Tschida disclosed his amended ethics complaint on
November 2, 2016, in an email sent to members of the Montana House of
Representatives. (Doc. 15-4 at 1.) Tschida attached to his amended ethics
complaint a cover letter to the House members that accused the Commissioner of
purposely delaying a decision. (Doc. 15-4 at 1.) Tschida had filed his amended

2

ethics complaint six weeks before his disclosure. (Doc. 15-4 at 2.) The general election took place November 8, 2016. (Doc. 65 at 2.)

The Commissioner dismissed Tschida's amended ethics complaint on November 21, 2016. (Doc. 65 at 4.) The Commissioner cited the following reasons to dismiss Tschida's amended ethics complaint: 1) it failed to state a violation; 2) it lacked sufficient allegations; and/or 3) it was frivolous. (Doc. 15-9 at 1.) The Commissioner also determined that the dismissal decision extinguished the confidentiality requirement of Mont. Code Ann. § 2-2-136(4). (Doc. 15-9 at 9.)

## LEGAL STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant should be "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court will grant summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A facial challenge to a statute requires the challenger to "establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## DISCUSSION

Mont. Code Ann. § 2-2-136 details the procedure for enforcement of the Code of Ethics. The Code of Ethics applies to Montana legislators, officers and

3

employees of state government, and certain officers and employees of local government. *See also* Mont. Code. Ann. § 2-2-101. A complainant may file a formal complaint alleging violation of the ethics code with the Commissioner. Mont. Code Ann. § 2-2-136(1). The Montana Legislature precluded from public inspection an ethics complaint and any documents and records obtained or prepared by the Commissioner in connection with an investigation or complaint in the law as enacted in 1995. Mont. Code Ann. § 2-2-136(4) (1995).

The Montana Legislature amended the statute to its current form in 2001. The legislature added the provision in 2001 that classifies ethics complaints as "confidential documents." Mont. Code Ann. § 2-2-136(4) (2001). In support of the amendment, Montana Senator Don Hargrove described ethics as "different than the rough and tumble finance laws." Executive Action on S. B. 205 Before the Sen. Comm. on State Admin., 57th Leg., Reg. Sess. 5 (Mont. 2001).

As amended, the confidentiality provision informs that a complaint, and records obtained or prepared by the Commissioner in connection with an investigation or complaint, constitute confidential documents typically not open for public inspection. Mont. Code Ann. § 2-2-136(4). More specifically, the statute provides that "[t]he complainant and the person who is the subject of the complaint shall maintain the confidentiality of the complaint and any related documents released to the parties by the commissioner until the commissioner issues a

4

decision." *Id.* The subject of the complaint can waive, in writing, the right of confidentiality. *Id.* The Commissioner must open the complaint and any related documents for public inspection upon the filing of a waiver. *Id.*

The Commissioner has interpreted a "decision" to mean the initial determination as to whether a complaint should be dismissed because it is frivolous, fails to state a potential violation, or lacks sufficient allegations. (Doc. 12 at 9); Mont. Code Ann. § 2-2-136(1)(b). The parties have likened this initial "decision" to a probable cause determination. A complaint that survives this initial screening for probable cause proceeds to an informal hearing stage. Mont. Code Ann. § 2-2-136(1)(c). The confidentiality provision no longer applies at the hearing stage. (Doc. 12 at 9.)

## I. The Confidentiality Provision as Applied to Elected Officials

Strict scrutiny applies to laws that restrict political speech. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010). Strict scrutiny requires the state to prove that the restriction on speech satisfies two criteria. The restriction first must promote a compelling interest. *Id.* And second, any restriction on protected speech must be narrowly tailored to achieve the state's compelling interest. *Id.* Narrow tailoring requires that the legislature must use a narrower alternative "if a less restrictive alternative would serve the Government's purpose." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000).

5

The burden falls on the state to "prove that the proposed alternatives will not be as effective as the challenged statute." *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004).

## A. The Commissioner's Content-Based Analysis

A statute that regulates speech qualifies as "content-neutral" only if the state "can justify it without reference to the content that it restricts or to the direct effect of the speech on listeners." *Lind v. Grimmer*, 30 F.3d 1115, 1117 (9th Cir. 1994) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The Commissioner has justified the confidentiality provision of Mont. Code Ann. § 2-2-136(4) based on the "speculative, embarrassing, and harassing" content of many ethics complaints. (Doc. 28 at 5.) This determination, on its face, seems to involve some content-based analysis of an ethics complaint. In other words, the sometimes "speculative, embarrassing, and harassing" content of the ethics complaint triggers the confidentiality provision. As noted by the Ninth Circuit in *Lind*, these concerns "stem from the direct communicative impact of the speech." *Lind*, 30 F.3d at 1118.

The Commissioner argues that the confidentiality provision requires no content-based analysis. (Doc. 78 at 13-15.) The Commissioner contends that the statute instead requires confidentiality "based on the personal, not political, nature of ethics complaints in general." (Doc. 78 at 14.) The Third Circuit in *Stilp v. Contino*, 613 F.3d 405 (3rd Cir. 2010), made no distinction between the alleged "personal" nature of an ethics complaint and the "political" nature of an ethics

6

complaint. Pennsylvania's ethics statute contained a confidentiality provision that prohibited disclosure of the filing of the complaint. *Stilp*, 613 F.3d at 406. The Court framed the issue as whether Pennsylvania could subject the complainant "to civil or criminal punishment for publicly disclosing his own complaint and the fact that he has filed it – or intends to file it – with the State Ethics Commission." *Id.*

*Stilp* considered the possibility that, without a confidentiality requirement, "a partisan individual could file and publicize a frivolous ethics complaint on the eve of an election for the purpose of undermining a political opponent's campaign." *Id.* at 414. No meaningful distinction exists "between publicizing allegations of unethical conduct on the eve of an election and doing so while also disclosing that an Ethics Act complaint was filed with the Commission." *Id.* The publication of the allegation itself, in either form, conceivably might affect the election. *Id.* A restriction on speech failed to provide a remedy.

Montana's confidentiality provision restricts speech regarding alleged wrongdoing by public officials. Regardless of the validity of an ethics complaint, the complainant typically alleges some type of wrongdoing. This alleged wrongdoing can include allegations that elected officials used their public offices for private gain or enjoyment. Tschida challenges the confidentiality provision both on its face and as applied to his September 21, 2016, amended ethics complaint. (Doc. 71 at 25.)

7

This type of speech "falls near to the core of the First Amendment." *Lind*, 30 F.3d at 1118 (citing *New York Times v. Sullivan*, 376 U.S. 254, 270-71 (1964)).

Similar to the complainant in *Stilp*, Tschida likely disclosed the filing of his amended ethics complaint on the eve of the 2016 general election in order to affect the outcome of the election. *Stilp*, 613 F.3d at 414. Tschida claims specifically that the Commissioner's failure to resolve his complaint until November 21, 2016, some two weeks after the election, violated his First Amendment right to political speech. (Doc. 72 at 25.) The Commissioner fails to explain how the "personal" nature of an ethics complaint differs from the potential "political" nature in terms of First Amendment analysis. Strict scrutiny must apply when the confidentiality provision applies to complaints against elected officials. *Jacobs*, 526 F.3d at 43.

**B. Montana's Interest in the Privacy of Elected Officials**

Tschida's complaint implicated the Governor and a member of the Governor's cabinet—Meg O'Leary, the Director of the Department of Commerce. (Doc. 15-9 at 19.) The Ninth Circuit has recognized that elected officials must endure "a heightened level of criticism." *Lind*, 30 F.3d at 1120. Elected officials possess "no privacy interest in freedom from accusations, baseless though they may be," regarding their conduct in public office. *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 373 (9th Cir. 2002). The Governor, as Montana's top elected

8

official, must endure "a heightened level of criticism" regardless of how baseless these accusations may be. *Lind*, 30 F.3d at 1120.

The Commissioner underscores the need for confidentiality by asserting that the public disclosure of the filing of an ethics complaint conveys the state's imprimatur or "increased legitimacy" to the allegations. (Doc. 67 at 24.) The Ninth Circuit in *Lind* faced a similar claim regarding the confidentiality requirement for complaints filed with Hawaii's campaign spending commission. Hawaii argued that disclosure that a complaint had been filed "somehow lends the State's imprimatur to such charges" and thereby dramatically increases the effectiveness of the charges. *Lind*, 30 F.3d at 1119. Hawaii put it bluntly: "the confidentiality requirement precludes the Commission's credibility from being invoked to buttress scandalous charges in the heat of a campaign." *Id.*

These concerns proved "insufficient" to justify any restrictions on speech. Hawaii could counter these concerns with the "truthful assertion that anyone can file a complaint with the Commission, for any reason, regardless of the merit." *Id.* Hawaii possessed no control over whether a party filed a complaint. Hawaii possessed no control over when a person filed a complaint. Under those circumstances, the Court concluded that "the fact of filing simply cannot signal the State's approval of a complainant's charges." *Id.*

The same logic applies here. Montana possesses no control over whether a person files an ethics complaint. Montana possesses no control over when a person might file an ethics complaint. The Commissioner plays no role in assisting a party in filing an ethics complaint. The mere filing of an ethics complaint with the Commissioner involves no state action, assistance, or approval. Mont. Code Ann. § 2-2-136(1)(a); *Lind*, 30 F.3d at 1119, n.2. *Lind* reached a similar conclusion with regard to campaign finance complaints. *Lind*, 30 F.3d at 1119 n.3.

A grand jury represents a classic form of state action. The action of the state, usually in the form of an investigation by police and prosecutors, "triggers" grand jury proceedings. By contrast, no action by the state "triggers" campaign finance complaints in Hawaii or ethics complaints in Montana. *Lind*, 30 F.3d at 1119 n.3. Disclosure of Tschida's ethics complaint divulged no confidential testimony of any witnesses. The disclosure divulged no confidential statements by the Commissioner or his staff. *See Stilp*, 613 F.3d at 414. Ethics complaints in Montana do not carry "the imprimatur of official suspicion" that would justify recognition of a privacy interest for elected officials with regard to allegations of official misconduct. *Lind*, 30 F.3d at 1119 n.3. The Commissioner fails to articulate a compelling governmental interest in protecting the Governor's privacy.

The Commissioner steadfastly asserts that publication of the filing of an ethics complaint would amplify potentially frivolous complaints based entirely on

10

speculation and complaints designed to accomplish nothing more than to embarrass and harass elected officials. (Doc. 28 at 5.) Tschida's amended ethics complaint provides a textbook example of speculation used for maximum potential embarrassment and harassment. Tschida admitted that his claim that the Governor somehow had accepted improper benefits from the Democratic Governor's Association had been "more speculative in nature" that "couldn't be 100 percent corroborated." (Doc. 70-1 at 44-45.)

Tschida further coarsened our political discourse with entirely speculative claims regarding the Governor and O'Leary and their unsubstantiated use of state-owned aircraft to facilitate "a personal relationship." (Doc. 15-4 at 1.) Montana's elected officials may take cold comfort in the notion that even a false statement may be deemed to make a valuable contribution to public debate as it brings about "the clearer perception and livelier impression of truth, produced by its collision with error." *Sullivan*, 376 U.S. at 279 n. 19 (1964) (quoting John Stuart Mill, *On Liberty* 15 (Oxford: Blackwell 1947)).

The Second Circuit in *Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d Cir. 1994), accepted the notion that the "bully pulpit" effect existed. The Court distinguished the concern that the public would overvalue the complaint from the greater concern that complainants would be tempted to "engage in a campaign of harassment" when armed with the ability to make public the fact of a complaint.

*Kamasinski*, 44 F.3d at 111. This concern resonated in the context of allegations of judicial misconduct before Connecticut's judicial review council.

The publication of the filing of complaints against judges could "result in influences that lead to the loss of judicial independence" and an uptick in filings of frivolous complaints. *Id.* The Court further highlighted Connecticut's interest in encouraging infirm or incompetent judges to step down voluntarily. The Court opined, without elaboration, that the likelihood of infirm or incompetent judges stepping down voluntarily would be "greatly reduced after publication that complaints have been filed against them." *Id.* (citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 835-36 (1978)).

These same concerns do not apply here. With respect to the Governor and other elected officials, the concept of "independence" gains no traction. Montana's partisan election system anticipates and fully expects elected officials to promote the policies and interests of their respective political parties. Montana also need not concern itself with the fear that infirm, incompetent, or even corrupt elected officials would hesitate to resign in the face of an ethics complaint and thereby tacitly admit to the validity of the complaint. Montana possesses a nearly perfect remedy to remove infirm, incompetent, or even corrupt elected officials that involves no suppression of protected speech – elections.

## C. The Lack of Narrow Tailoring

Even if the Commissioner could establish that the confidentiality provision promotes a compelling state interest as applied to elected officials, the Montana Legislature has failed to tailor narrowly the restrictions on protected speech. The Commissioner contrasts Montana's confidentiality provision with the similar provision at issue in *Lind*. Hawaii's statute required confidentiality throughout the entire review process – permanently if the commission found no probable cause. *Lind*, 30 F.3d at 1117.

The Commissioner argues that Montana's statute mandates confidentiality only "before a probable cause determination." (Doc. 67 at 27.) The language of Montana's statute imposes no such limitation. Mont. Code Ann. § 2-2-136(4). The statute simply provides that the complainant and the subject of the complaint must maintain the confidentiality of the complaint "until the commissioner issues a decision." *Id.* The statute provides no direction to the Commissioner on the meaning of "decision" within Mont. Code Ann. § 2-2-136(4). The confidentiality provision imposes no temporal limitation on the Commissioner to make any "decision," whether it relates to probable cause or a final decision on the merits. The Commissioner determined in resolving Tschida's amended ethics complaint that the confidentiality provision only lasts through the probable cause determination. (Doc. 15-9 at 8-9.)

13

The Commissioner admitted to having placed a lower priority on reviewing Tschida's amended ethics complaint in favor of resolving campaign finance complaints. (Doc. 65 at 2.) The Commissioner previously had pledged to address campaign finance complaints "in real time" before the pending 2016 general election. (Doc. 65 at 2.) The Commissioner did not issue a decision on Tschida's amended ethics complaint until November 21, 2016, some two weeks after the general election. (Doc. 65 at 4.)

The Commissioner contends that the "pressing workload" at election time provides a reasonable explanation for any delay in resolving Tschida's complaint until after the election. (Doc. 67 at 32.) The Court offers no view on the reasonableness of the Commissioner's explanation for the delay in resolving Tschida's amended ethics complaint. The Court simply notes that the confidentiality provision contains no mechanism to prevent the Commissioner from suppressing a complainant's political speech regarding the filing of the complaint against an elected official for as long as the Commissioner deems appropriate.

As applied to Tschida's amended ethics complaint, the statute operated to allow the Commissioner to suppress Tschida's speech regarding his filing of the amended ethics complaint against the Governor at the time that it proved most relevant in violation of the First Amendment. This conclusion does nothing to

14

encourage qualified citizens to run for elected offices. It represents the trade-off we must accept, however, to live in a free society. It further comports with our "profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open, and that it may well include vehement, caustic and sometimes unpleasantly sharp attacks on governmental public officials." *Sullivan*, 376 U.S. at 270-71.

## II.     The Confidentiality Provision as Applied to State Employees

The Commissioner asserts that the confidentiality provision serves an important governmental interest in protecting the privacy of unelected state employees who find themselves the subjects of ethics complaints. The Commissioner supports this argument by pointing out that unelected state employees comprise the largest group potentially subject to an ethics complaint. (Doc. 67 at 20.) The parties agree that 14,283 public employees work for the State of Montana. (Doc. 68 at 3). The parties also agree that Montana has only 231 elected officials at the state and county level subject to the Montana Code of Ethics. *Id.*

Not surprisingly, the bulk of ethics complaints appear to relate to unelected state employees. Between January 1, 2012 and June 1, 2017, the Commissioner received 41 ethics complaints. (Doc. 70-3 at 53.) The 41 ethics complaints alleged violations by 85 individuals and organizations. (Doc. 70-3 at 53.) Of those 85

15

respondents, according to the Commissioner, only 22 are elected or appointed

officials who were subject to the confidentiality provision in Mont. Code Ann. § 2-

2-136(4). (Doc. 70-3 at 53; Doc. 82 at 7.)

## A. Intermediate Scrutiny Applies to Employee Privacy Interests

The Ninth Circuit has not addressed directly the degree of privacy that

should be afforded to political appointees and state employees. The Ninth Circuit

has noted that even unelected political candidates and their supporters "must be

prepared" to endure discussion of their respective campaign spending and

contribution practices. *Lind*, 30 F.3d at 1120. Montana's ethics code sweeps more

broadly than the "rough and tumble" of election campaigns. Montana's ethics code

classifies both elected officials and the appointed "directors of the executive

branch" as "State officers." Mont. Code Ann. § 2-2-102(11). Other courts have

focused, however, on the special role played by elected officials.

The ethics law in *Stilp* focused on holders of "public office." *Stilp*, 613 F.3d

at 406-07. The statement of purpose discussed the need to "strengthen the faith and

confidence" of the citizens of Pennsylvania that the financial interests of

"nominees or candidates for public office do not conflict with the public trust." *Id.*

at 407. The complaint originally filed in *Stilp* alleged the improper use of public

funds for political purposes by a prominent member of the Pennsylvania

legislature. *Id.* at 408. The law at issue in *Lind* applied to candidates for public

16

office, their campaign's financial supporters, and political groups. *Lind*, 30 F.3d at 1117-18. All of these targets voluntarily entered the political arena. The Court agrees that complaints in these cases raised issues of protected political speech that required application of strict scrutiny.

The Supreme Court in *NASA v. Nelson*, 562 U.S. 134 (2011), reasoned that the federal Privacy Act's nondisclosure requirement gives "forceful recognition" to a federal employee's interest in maintaining the "confidentiality of sensitive information in his personnel files." *Id.* at 156 (quoting *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 318 n.16 (1979)). Montana, too, has acknowledged the privacy interest possessed by public employees in relation to personnel matters and even "internal disciplinary matters." *Billings Gazette v. City of Billings*, 313 P.3d 129, 140 (Mont. 2013) ("Billings Gazette II"); *see also Moe v. Butte-Silver Bow County*, 371 P.3d 415 (Mont. 2016). Delegates to the Montana Constitutional Convention recognized that a deliberation regarding personnel matters for state employees "would ordinarily be classified and would not be public" as the Bill of Rights Committee considered such matters to be "private." Mont. Const. Conv. Vol. V at 1670-71. By contrast, Montana law opens campaign finance complaints to public inspection. Mont. Code Ann. § 13-37-119.

Unlike elected officers, unelected political appointees and state employees have not sacrificed their privacy by "injecting themselves into public debate."

17

*Lind*, 30 F.3d at 1120. To suggest that O'Leary occupies a position of public trust proves unavailing. All public employees in Montana, from the Governor, to university presidents, to town clerks, serve in positions of public trust. *Billings Gazette v. City of Billings*, 267 P.3d 11, 15-18 (Mont. 2011) (discussing cases). Montana's six public university presidents nevertheless enjoy a presumption of privacy in their employment-related matters. *Missoulian v. Board of Regents*, 675 P.2d 962, 968 (Mont. 1984). It stands to reason that O'Leary, as Director of the Department of Commerce, would enjoy the same presumption of privacy in employment-related matters as a public university president.

As the Supreme Court instructed in *Ward*, the "government's purpose" for adopting the regulation represents "the principal inquiry" in discerning content-neutrality. *Ward*, 491 U.S. at 791. With regard to state employees, the confidentiality provision marks no "disagreement with the message" that the ethics complaint may convey. *Id*. The confidentiality provision instead "serves purposes unrelated to the content of the expression" for ethics complaints against state employees. *Id*.

The fact that ethics complaints may result in disciplinary action by the employing state agency justifies this "employment-related" approach to the confidentiality provision as applied to state employees. Mont. Code Ann. § 2-2-136(2)(c). Information relevant to employment may be subject to additional

18

privacy interests, including sensitive information in personnel files, such as health records, disciplinary reports, and past illegal drug use. *NASA*, 562 U.S. at 156-58; *see also Whalen v. Roe*, 429 U.S. 589, 599-600 (1977) (referring to public employees' constitutional privacy "interest in avoiding disclosure of personal matters"). The confidentiality provision serves to protect these legitimate privacy interests for state employees, as recognized in *NASA* and *Whalen*, and by the Montana Supreme Court in *Billings Gazette II* and *Missoulian*.

The Court will apply the intermediate level of scrutiny to the confidentiality provision with regard to unelected state employees, including O'Leary. The confidentiality provision must promote an important or substantial state interest and impose only an incidental restriction on speech. *Turner Broadcasting, Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994). This incidental burden on speech must be unrelated to the suppression of free expression. *Turner Broadcasting, Inc.*, 512 U.S. at 662. The incidental restrictions on First Amendment freedoms must be no greater than is essential to the furtherance of that interest. *Id.* The confidentiality provision need not be the least speech-restrictive means of advancing the state's interests, but instead must promote "a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (quoting *Ward*, 491 U.S. at 799). In other words, the confidentiality provision must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.*

19

## B. Incidental Burden as Applied to State Employees

The Montana Legislature tailored the confidentiality provision to allow the Commissioner leeway to mandate confidentiality of potentially serious personnel matters and other private information. For example, the confidentiality provision suppresses only the "complaint and records obtained or prepared by the commissioner in connection with an investigation or complaint." Mont. Code Ann. § 2-2-136(4). The complainant remains free to publicize the facts or allegations underlying the complaint. (Docs. 19 at 12; 67 at 28.) The Commissioner also may confirm the filing of a complaint, identify the subject of the complaint, and provide procedural updates. Mont. Code Ann. § 2-2-136(5).

The Court agrees that complainants, including Tschida, possess available alternative methods, in the state employee context, to speak about the facts underlying the complaint or to disclose the fact of the complaint itself through the Commissioner's office without violating Mont. Code Ann. § 2-2-136(4). The Supreme Court in *Madsen v. Women's Health Center*, 512 U.S. 753, 770 (1994), upheld a 36-foot buffer zone around an abortion clinic and restrictions on noise levels due to the ample availability of other methods for protestors to get out their message. Tschida possesses ample other avenues to get out his message.

Nothing prohibited Tschida from speaking separately about the allegations of misconduct contained in his complaint against O'Leary. The confidentiality

20

provision prohibited Tschida from discussing only his decision to memorialize those allegations against O'Leary in his amended ethics complaint to the Commissioner. This availability of alternative communication methods reflects the legislature's narrow tailoring of the confidentiality provision. *Madsen*, 512 U.S. at 770; *see also Ward*, 491 U.S. at 802-03 (upholding city's narrowly tailored restrictions on loud music volume).

Tschida counters that the Commissioner could protect the privacy of state employees named in ethics complaints through means less restrictive on speech than the confidentiality provision. For example, Tschida suggests that the Commissioner could post disclaimers on the Commissioner's website to emphasize that complaints represent merely allegations not endorsed by the State of Montana. Tschida suggests that the Commissioner could inform subject of the ethics complaints of the availability of consulting with legal counsel regarding potential civil torts against complainants who file frivolous or libelous ethics complaints. And finally, Tschida argues that the legislature could enact civil or criminal penalties for knowingly filing a false ethics complaint. (Doc. 71 at 24.)

Tschida's critiques of the confidentiality provision miss the mark with respect to state employees. The confidentiality provision need not be the least speech-restrictive means to advance the state's important interest in protecting the privacy of state employees. The Montana Legislature has determined that the ideas

21

posited by Tschida would achieve less effectively the important interest in protecting the privacy of state employees than the confidentiality provision, as added by amendment in 2001. *See Turner Broadcasting, Inc.*, 512 U.S. at 662. The First Amendment affords this limited discretion to the Montana Legislature in determining how best to protect the important privacy interests of state employees, including O'Leary, who find themselves the subject of an ethics complaint. *Id.*

## CONCLUSION

The First Amendment protects Tschida's disclosure of the amended ethics complaint that he filed against the Governor. The confidentiality provision of Mont. Code Ann. § 2-2-136(4) imposes a content-based restriction on political speech that subjects the provision to strict scrutiny as applied to Tschida's complaint against the Governor. The Commissioner has failed to demonstrate that the confidentiality provision serves a compelling governmental interest in protecting the privacy of state elected officials against claims of official misconduct.

Further, the legislature failed to tailor the statute narrowly. The statute provides the Commissioner with limited guidance on how to evaluate probable cause. The statute proscribes no length of time in which the Commissioner must make the "decision" regarding probable cause. Accordingly, the confidentiality provision violates Tschida's First Amendment right to engage in political speech as

22

applied to his complaint against the Governor. *Lind*, 30 F.3d at 1118; *Stilp*, 613 F.3d at 414.

Tschida's claims fail, however, to meet the high standard for a facial challenge as the Commissioner has demonstrated that the confidentiality provision survives a First Amendment challenge under some circumstances. Montana's interest in protecting the privacy of unelected state employees, including O'Leary, exceeds that of elected state officers. Protection of the privacy of non-elected state employees qualifies as an important state interest. *NASA*, 562 U.S. at 156-58; *Billings Gazette II*, 313 P.3d at 140.

The Montana Legislature tailored the confidentiality requirement to that end by suppressing disclosure by the complainant only of the full complaint as filed. The confidentiality provision allows the complainant to disclose the allegations underlying the complaint and accompanying documents. The Commissioner has further limited application of the confidentiality provision up to the time that the Commissioner makes a probable cause determination. The Court declines to second-guess the Montana Legislature's judgment as to the most effective method to protect the privacy interests of state employees. *Turner Broadcasting, Inc.*, 512 U.S. at 662.

23

# ORDER

The confidentiality provision of Mont. Code Ann. § 2-2-136(4) violates the
First Amendment as applied to elected officials, including the Governor in this
case. The confidentiality provision survives intermediate scrutiny, however, as
applied to complaints filed against to state employees, including the complaint
against O'Leary in this case.

Accordingly, **IT IS ORDERED** that Tschida's Motion for Partial Summary
Judgment (Doc. 69) is **GRANTED IN PART**, with respect to the Governor, and
**DENIED IN PART**, with respect to Meg O'Leary, in accordance with the above
Order.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for
Summary Judgment (Doc. 66) is **GRANTED IN PART**, with respect to Meg
O'Leary, and **DENIED IN PART**, with respect to the Governor, in accordance
with the above Order.

The Court permanently enjoins enforcement of the confidentiality provision
contained within Mont. Code Ann. § 2-2-136 (4), as applied to ethics complaints
filed against the Governor and other elected officials in the State of Montana.

DATED this 15th day of December, 2017.

Brian Morris
United States District Court Judge